IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,          :

    Plaintiff,                    :

    vs.                           :  Case No. 3:91cv309

ATLAS LEDERER COMPANY, et al.,     :  JUDGE WALTER HERBERT RICE

    Defendants.                   :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S MOTION TO STRIKE JURY DEMAND OF DEFENDANT SAUL SENSER (DOC. #713)

---

This litigation arises under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq. Plaintiff United States of America has settled its claims with the members of the United Scrap Lead Respondent Group ("Respondent Group"). Pursuant to § 107(a) and § 113(f) of CERCLA, 42 U.S.C. § 9607(a) and § 9613(f), the United States and the Respondent Group now seek to recover the costs they have incurred to remediate environmental contamination at the United Scrap Lead Company Superfund Site ("USL Site" or "Site") in Troy, Ohio, from other potentially responsible parties ("PRPs"). At that Site, United Scrap Lead Company ("USL") collected used car, truck and industrial batteries from numerous businesses and

individuals. The batteries were broken open to remove the lead cores and lugs, which caused the USL Site to become contaminated with hazardous substances, including lead and lead contaminated sulphuric acid. As a result of that contamination, the Site has been included on the National Priorities List. See 40 C.F.R. Pt. 300, App. B. The Respondent Group has funded the remedy which has resulted in the cleanup of that hazardous waste site.

In its Second Amended Complaint (Doc. #649), the Government alleges that it has incurred response costs, in excess $9,000,000, which it is seeking to recover from, among others, Saul Senser.[1] See Doc. #649 at ¶¶ 43-44. The Government has set forth two theories of liability against Saul Senser 1) that he is directly liable for his own actions under § 107(a) of CERCLA; and 2) that he is derivatively liable under a piercing the corporate veil theory for the actions of Senser Metal, Inc. ("Senser Metal"), a corporation controlled by him. In his Answer to Plaintiff's Amended Complaint, Saul Senser has demanded a jury trial.[2] See Doc. #655. This litigation is now before the Court on Plaintiff's Motion to Strike Jury Demand of Defendant Saul Senser (Doc. #713). The Government had previously filed a motion, requesting such relief; however, this Court overruled that request without prejudice to renewal, concluding that the parties should address the decision of the United States Supreme Court in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002). See Doc. #704 at 7-10. In their

---

[1] As Saul Senser has died, this Court has granted the Government's motion to substitute his Estate and the Executor of his Estate, in accordance with Rule 25 of the Federal Rules of Civil Procedure. See Doc. #730. For sake of consistency, however, the Court utilizes the name Saul Senser throughout this Decision.

[2] No other party has demanded a jury trial in this litigation.

memoranda (see Docs. ##713, 724 and 725), the parties have addressed Knudson. In addition, the Government has incorporated by reference the decisions it cited in support of its initial Motion to Strike the Jury Demand of Saul Senser (Doc. #660), which this Court has considered. This Court now rules upon the Government's motion.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved…." In City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687 (1999), the Supreme Court, in the course of deciding whether there is a right to a jury trial in an action brought under 42 U.S.C. § 1983, restated the analytical framework that is applied to determine whether a party has a right to a jury trial in an action under a federal statute:

> Consistent with the textual mandate that the jury right be preserved, our interpretation of the Amendment has been guided by historical analysis comprising two principal inquiries. "[W]e ask, first, whether we are dealing with a cause of action that either was tried at law at the time of the founding or is at least analogous to one that was." Markman v. Westview Instruments, Inc., 517 U.S. 370, 376 (1996). "If the action in question belongs in the law category, we then ask whether the particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791." Ibid.
> 
> With respect to the first inquiry, we have recognized that "suits at common law" include "not merely suits, which the common law recognized among its old and settled proceedings, but [also] suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." Parsons v. Bedford, 3 Pet. 433, 447 (1830). The Seventh Amendment thus applies not only to common-law causes of action but also to statutory causes of action "'analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty.'" Feltner [v. Columbia Pictures Television, Inc., 523 U.S. 340, 348, (1998)] (quoting Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989)); accord, Curtis [v. Loether, 415 U.S. 189, 193 (1974)].

- 3 -

Id. at 708-09. Therein, the Supreme Court held that there was a right to a jury trial in an action brought under § 1983, predicated upon the theory that the City of Monterey had violated the Takings Clause of the Fifth Amendment as a result of a temporary regulatory taking. In Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989), the Supreme Court described the test that is applied to determine whether there is a right to a jury trial in a statutory cause of action:[3]

> The form of our analysis is familiar. "First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." Tull v. United States, 481 U.S. 412, 417-418 (1987) (citations omitted). The second stage of this analysis is more important than the first. Id., at 421.

Id. at 42.

Herein, the Government argues that Saul Senser is not entitled to a jury trial under either its claim under § 107(a) of CERCLA or its piercing the corporate veil theory. As a means of analysis, the Court will initially address the question of whether Saul Senser is entitled to a jury trial on the Government's claim under § 107(a), before turning to its theory predicated upon piercing the corporate veil.

1. Is Saul Senser Entitled to a Jury Trial on the Government's Claim under § 107(a) of CERCLA?

According to the Government, the Seventh Amendment does not afford Saul Senser the right to a jury trial on its claim under § 107(a) of CERCLA, because it is

---

[3]In Granfinanciera, the Supreme Court concluded that the Seventh Amendment guaranteed the right of a party, which had not filed a claim in a bankruptcy, to a jury trial in an action filed against it in a bankruptcy proceeding to recover for an alleged fraudulent conveyance, even though Congress had declared such an action to be a core proceeding.

seeking restitution with that claim, which it deems to be an equitable remedy.[4] Courts considering the question have, with near uniformity, concluded that a cost recovery action under CERCLA is an equitable action. In California Dept. of Toxic Substances Control v. Alco Pacific, Inc., 217 F. Supp.2d 1028 (C.D.Cal. 2002), the court discussed the pertinent authority, in reaching that conclusion:

> Substantial case law supports the conclusion that CERCLA cost recovery actions are equitable in nature and thus that no jury trial is available. See, e.g., Hatco Corp. v. W.R. Grace & Co. Conn., 59 F.3d 400, 412-14 (3d Cir. 1995) (holding that the parties are not entitled to a jury trial in suits brought under §§ 9607 and 9613); [United States v. Northeastern Pharmaceutical & Chemical Co., Inc., 810 F.2d 726, 749 (8th Cir. 1986)] (disagreeing with defendant's characterization of response costs as legal damages, and holding that defendant was not entitled to a jury trial "[w]hen the government seeks recovery of its response costs under CERCLA ..., [because] it is in effect seeking equitable relief in the form of restitution or reimbursement of the costs it expended in order to respond to the health and environmental danger presented by hazardous substances"); Metal Processing Co. v. Amoco Oil Co., 173 F.R.D. 244, 246 (E.D.Wis. 1997) (holding that parties are not entitled to a jury trial in suits brought under § 9607 because CERCLA relief is equitable in nature); Dartron Corp. v. Uniroyal Chem. Co., Inc., 917 F. Supp. 1173, 1184 (N.D. Ohio 1996) (finding that the parties are not entitled to a jury trial in suits brought under § 9607, but submitting questions of breach of contract to the jury and reserving the possibility that the court would empanel an advisory jury to address apportionment of damages); Tri-County Business Campus Joint Venture v. Clow Corp., 792 F. Supp. 984, 997 (E.D.Pa. 1992) (refusing to re-examine settled case law holding that there is no right to jury trial in CERCLA recovery claims); United States v. Mottolo, 605 F. Supp. 898, 912-13 (D.N.H. 1985) ("[N]o Seventh Amendment right to jury trial attaches

---

[4]In Granfinanciera, the Supreme Court indicated that a two-part test is utilized to determine whether a party is entitled to a jury trial in a statutory action, to wit: 1) a comparison of the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity; and 2) an examination of the remedy sought in order to determine whether it is legal or equitable in nature. 492 U.S. at 42. Herein, this Court dispenses with the first prong of that analytical framework, since, as is discussed below, the Supreme Court noted in Knudson that restitution can be either a legal or an equitable claim, depending upon the basis of the underlying remedy. 534 U.S. at 213.

> where plaintiffs seek merely equitable relief, the return of monies expended for the cleanup of hazardous waste. Plaintiffs seek restitution, that is, to restore the status quo by receiving their rightful reimbursement. This restitution remedy is under the jurisdiction of a court of equity, and there is no jury trial right where purely equitable relief is sought").

Id. at 1046-47 (footnote omitted). See also, Decisions cited in Doc. #660 at 4-6.

On a number of recent occasions, the Supreme Court has addressed the issue of whether claims for restitution are equitable, in the context of deciding what constitutes an equitable action, under § 502(a)(3) of the Employee Retirement Income Security Act of 1975 ("ERISA"), which provides, inter alia, that a fiduciary of a benefit plan governed by that statute may initiate an action to obtain an injunction to enjoin any act that violates the plan and "other appropriate equitable relief." See 29 U.S.C. § 1132(a)(3). In Mertens v. Hewitt Associates, 508 U.S. 248 (1993), the Supreme Court construed that provision to authorize only "those categories of relief that were typically available in equity," and thus rejected a claim that the Court concluded sought "nothing other than compensatory damages." Id. at 255-56.

The Supreme Court initially addressed that issue in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002). That litigation arose out of the effort by fiduciaries of an employee benefit plan governed by ERISA, 29 U.S.C. § 1001, et seq., to obtain payment from certain beneficiaries of the plan for the amount expended on their behalf for health care benefits. The beneficiaries had been injured as a result of an automobile accident, with one of them being paralyzed, and brought suit in state court against the manufacturer of the automobile in which they had been riding when injured. The plan contained a reimbursement provision, giving the fiduciary the right to recover from a

beneficiary, the amount of health benefits paid to that beneficiary, which the beneficiary was able to recover from a third-party.  The plan also provided a first lien on any recovery a beneficiary obtained from a third-party.  In that dispute, the beneficiaries settled their lawsuit against the manufacturer for $650,000.  That sum was allocated during a state-court proceeding, with $14,000 being paid to the plan, although it paid nearly $350,000 in medical benefits to one of its beneficiaries, and slightly less than $257,000 allocated to a Special Needs Trust created under state law, to provide for the future medical needs of another of the beneficiaries.[5]  The fiduciaries then brought suit in federal court under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), setting forth a claim of restitution with which it sought to recover nearly $400,000.[6]  After the District Court had entered summary judgment in favor of the beneficiaries, the Ninth Circuit affirmed, concluding that the fiduciaries' claim did not constitute "other appropriate equitable relief," as that phrase is used in § 502(a)(3).

Upon further appeal, the Supreme Court noted that "restitution is a legal remedy when ordered in a case at law and an equitable remedy … when ordered in an equity case, and whether it is legal or equitable depends on the basis for [the plaintiff's] claim and the nature of the underlying remedies sought." Id. at 213 (internal quotation marks and citation omitted; ellipses and brackets in the original). The Knudson Court elaborated upon that distinction:

---

[5]The remainder of the proceeds of the settlement went to attorney's fees and to reimburse the California Medical Program.

[6]The fiduciary also requested injunctive relief, seeking to enforce the reimbursement provision of the plan.

> In cases in which the plaintiff "could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution at law through an action derived from the common-law writ of assumpsit. 1 Dobbs[, Law of Remedies § 4.2(1), at 571 (2d ed.1993)]. See also Muir, [<u>ERISA Remedies: Chimera or Congressional Compromise?</u>, 81 Iowa L. Rev. 1, 37 (1995)]. In such cases, the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money." Restatement of Restitution § 160, Comment a, pp. 641-642 (1936). Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).
>
> In contrast, a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. See 1 Dobbs § 4.3(1), at 587-588; Restatement of Restitution, supra, § 160, Comment a, at 641-642; 1 G. Palmer, Law of Restitution § 1.4, p. 17; § 3.7, p. 262 (1978). A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust […] or an equitable lien upon other property of the [defendant]." Restatement of Restitution, supra, § 215, Comment a, at 867. <u>Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession</u>.

Id. at 213-14 (emphasis added). Therein, the Supreme Court concluded that the fiduciaries sought a legal rather than equitable remedy, because the beneficiaries did not possess funds which could be restored to the fiduciaries, given that the settlement proceeds had been paid to the Special Needs Trust and to the beneficiaries' attorney.[7] Id. at 214. The Supreme Court noted that "[t]he kind of

---

[7]In the appeal before the Supreme Court, the fiduciaries did not argue that they had a right to the funds in the possession of that Trust or the beneficiaries' counsel.

- 8 -

restitution that [the fiduciaries] seek, therefore, is not equitable[,] the imposition of a constructive trust or equitable lien on particular property[,] but legal[,] the imposition of personal liability for the benefits that they conferred upon [the beneficiaries]." Id.

In Sereboff v. Mid Atlantic Medical Services, Inc., — U.S. —, 126 S.Ct. 1869 (2006), the Supreme Court again considered "the circumstances in which a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) may sue a beneficiary for reimbursement of medical expenses paid by the ERISA plan, when the beneficiary has recovered for its injuries from a third party." Id. at 1872. Therein, Marilyn and Joel Sereboff (collectively "the Sereboffs") were provided health insurance benefits under an employer sponsored plan governed by ERISA. Under that plan, they were required to reimburse the plan, for the health benefits they had received, from any recovery they obtained from a third-party that had caused the beneficiary's injury. The Sereboffs were injured in an automobile accident, and the plan, Mid Atlantic Medical Services, Inc. ("Mid Atlantic"), paid their medical expenses. Subsequently, they sued third-parties whose actions were alleged to have caused their injuries. Thereafter, Mid Atlantic sent a letter to the Sereboffs attorney, claiming a lien on any amount his clients obtained as a result of that lawsuit, up to the sum it had paid for their health benefits. Although the Sereboffs ultimately settled their lawsuit for $750,000, they declined to pay Mid Atlantic any portion of the approximately $75,000, it had expended for their health benefits. As a consequence, Mid Atlantic brought suit under § 502(a)(3) of ERISA, setting forth a claim of restitution with which it sought to recover that sum. The District Court and the Fourth Circuit held that Mid Atlantic's claim was equitable

and that, therefore, it could be pursued under § 502(a)(3). Upon further appeal, the Supreme Court affirmed, concluding that Mid Atlantic's claim was equitable, because the plan identified a particular fund out of which the fiduciary would be paid, distinct from the Sereboffs' general assets, to wit: their recovery from third-parties for the injuries suffered in the accident. Id. at 1875. The Sereboff Court also indicated that Mid Atlantic's claim was equitable, because "it is indistinguishable from an action to enforce an equitable lien established by agreement, of the sort epitomized by our decision in Barnes [v. Alexander, 232 U.S. 117 (1914)]." Id. at 1877.[8] In Sereboff, the Supreme Court distinguished Knudson, because the beneficiaries in that earlier decision, unlike the Sereboffs, did not possess funds over which the fiduciaries could impose an equitable lien or a constructive trust, which the Sereboff Court reiterated was a feature of equitable restitution. Id. at 1874.

The Government argues that Knudson is inapplicable, because the Court therein was merely construing the phrase "other appropriate equitable relief" in a statute, § 502(a)(3) of ERISA, rather than deciding whether the Seventh

---

[8]The Sereboff Court described Barnes, a decision rendered before the merger of law and equity, as follows:
> In Barnes v. Alexander, 232 U.S. 117 (1914), for instance, attorneys Street and Alexander performed work for Barnes, another attorney, who promised them "one-third of the contingent fee" he expected in the case. Id., at 119. In upholding their equitable claim to this portion of the fee, Justice Holmes recited "the familiar rul[e] of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." Id., at 121. On the basis of this rule, he concluded that Barnes' undertaking "create[d] a lien" upon the portion of the monetary recovery due Barnes from the client, ibid., which Street and Alexander could "follow … into the hands of … Barnes," "as soon as [the fund] was identified," id., at 123.

126 S.Ct. at 1875.

Amendment provides for the right to a jury trial for a claim under that statute. Although Knudson was decided in the context of determining whether a claim constituted such equitable relief under § 502(a)(3) of ERISA, that decision is equally applicable to the question of whether the Seventh Amendment affords a defendant the right to a jury trial, because the plaintiff is seeking legal, rather than equitable restitution. In Knudson, Justice Ginsberg argued in her dissenting opinion that Congress could not have intended courts to determine whether a claim for restitution constituted "other appropriate equitable relief," under § 502(a)(3), through an "antiquarian inquiry" into the status of law and equity at common law before their merger. 534 U.S. at 233-34. The majority rejected that argument by pointing out, inter alia, that courts are familiar with that inquiry from determining whether a jury trial is warranted under the Seventh Amendment (id. at 217), thus indicating that the inquiry under § 503(a)(3) of ERISA and the Seventh Amendment are the same. Moreover, courts have cited the authorities, relied upon by the Knudson Court, in deciding whether there is a right to a jury trial. Moreover, in Periera v. Farace, 413 F.3d 330, 340 (2d Cir. 2005), cert. denied, 126 S.Ct. 2286 (2006), the Second Circuit applied Knudson, when determining that the defendants were entitled to a jury trial on a claim charging them with breach of fiduciary duty. Additionally, in United States v. Sunoco, Inc., — F. Supp.2d —, 2007 WL 2032935 (E.D.Pa. July 12, 2007), the court noted that Knudson had cast doubt on the validity of the decision by the Third Circuit in Hatco Corp. v. W.R. Grace & Co. Conn., 59 F.3d 400 (3d Cir.1995),[9] to the effect that there is no right to a jury

---

[9]Hatco was cited in support of the proposition that there is no right to a jury trial in a cost recovery action under § 107(a) of CERCLA, by the District Court in

trial in a cost recovery action under CERCLA, because such a claim is for restitution, an equitable claim, writing:

> As noted above, although the Hatco court assumed that cost recovery [under § 107(a) of CERCLA] is equitable simply because it involves restitution, that reasoning has been called into question by the Supreme Court's later clarification that not all restitution is equitable. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002).

Id. at *8, fn 14.[10] Therefore, this Court rejects the Government's contention that Knudson does not apply to the question of whether a party is entitled to a jury trial in a civil action in accordance with the Seventh Amendment.

In addition, the Government points out that the claim to restitution in Knudson arose out of a contractual relationship, while its claim to restitution herein arises out of an obligation imposed upon Saul Senser under CERCLA. Although the factual contexts in which the claims for restitution arose in Knudson and in this litigation are distinguishable, that is a distinction without a difference. In Knudson, the Supreme Court did not state that its decision was limited to instances in which the claim for restitution had a contractual underpinning. Moreover, the legal authority relied upon by the Knudson Court did not draw such a distinction.

In addition, the Government points out that the overwhelming majority of courts addressing the question have held that the Seventh Amendment does not provide for a right to a jury trial in an a cost recovery action under § 107(a) of CERCLA, because such an action is equitable. Although this Court agrees that

---

California Dept. of Toxic Substances Control, supra, and by the Government herein. See Doc. #660 at 5.

[10]In Sunoco, the Government set forth claims under Pennsylvania state law; there was not a claim under CERCLA.

- 12 -

courts have so held with near unanimity, that does not persuade it to agree with the Government that Saul Senser does not have a right to a jury trial on this claim. It bears emphasis that the most of the decisions cited by the Government, and all of the decisions relied upon by the District Court in California Dept. of Toxic Substances Control, supra, were issued before the Supreme Court decided Knudson. As a consequence, the courts therein merely stated that a cost recovery action under § 107(a) of CERCLA is for restitution, which is an equitable form of relief, and that, therefore, the right to a jury trial does not exist in such an action. In those decisions, the courts did not discuss the principle that restitution can be either a legal or an equitable remedy. Since Knudson has been decided, a number of District Courts have held that the Seventh Amendment does not guarantee a jury trial in cost recovery action under § 107(a) of CERCLA, given that such an action seeks restitution which is an equitable remedy, decisions reached without discussing Knudson or the principle that restitution can be either a legal or an equitable remedy. See e.g., Neumann v. Carlson Environmental, Inc., 429 F. Supp.2d 946 (N.D.Ill. 2006); United States v. Ekberg, 2004 WL 793313 (N.D.Ill. 2004); California Dept. of Toxic Substances Control, supra. Therefore, the near unanimous authority cited by the Government is not persuasive.

Having rejected the Government's arguments as to why Knudson is inapplicable,[11] this Court turns to the question posed herein, to wit: is Saul Senser

---

[11]The Government also contends that a jury trial is not available herein, because of the close relationship between a cost recovery action under § 107(a) of CERCLA and a claim for contribution under § 113(f) of that statute. The Government points out that courts, including the Sixth Circuit, have stressed the equitable nature of the necessary allocation of costs in a contribution action. See Doc. #713 at 7-8 (citing, inter alia, United States v. R.W. Meyer, Inc., 932 F.2d 568 (6th Cir. 1991). Whether there is a right to a jury trial in a contribution action over § 113(f) is an

- 13 -

entitled to a jury trial on the Government's cost recovery action against him. Based upon the decisions of the Supreme Court in Sereboff and Knudson, this Court concludes that the Government's claim against Saul Senser is for legal, rather than for equitable restitution, and that, therefore, he is entitled to a jury trial. This litigation is functionally indistinguishable from Knudson.  In each case, the party seeking to recover had paid for a benefit to the defendant, which the defendant was obligated to pay.[12]  In Knudson, the fiduciaries paid the beneficiaries under their health insurance coverage, while the Government has paid a portion of the sum needed to cleanup the USL Site, for which Saul Senser is alleged to be liable.  In neither Knudson nor in this litigation, unlike Sereboff, has the plaintiff pointed to a particular sum or cache of funds over which a court could impose an equitable lien or a constructive trust.  Thus, in this litigation, the Government seeks to impose personal liability upon Saul Senser, rather than requesting to be "restore[d] … to particular funds or property in [his] possession." Knudson, 534 U.S. at 214.  That fact renders this litigation distinguishable from Sereboff.

      Accordingly, this Court concludes that Saul Senser is entitled to a jury trial on the Government's cost recovery claim under § 107(a) of CERCLA and overrules the Government's Motion to Strike Jury Demand of Defendant Saul Senser (Doc. #713), to that extent.

---

issue which this Court need not address herein, since the Respondent Group has not set forth such a claim against Saul Senser.

[12]Section 1 of the Restatement (First) of Restitution provides that a person who has been unjustly enriched at the expense of another is required to make restitution.

2. Is Saul Senser Entitled to a Jury Trial on the Government's Claim Predicated upon a Piercing the Corporate Veil Theory?

The Government argues, for a number of reasons, that Saul Senser is not entitled to a jury trial on its claim that he is derivatively liable under a piercing the corporate veil theory. In deciding whether he is entitled to a jury trial on that claim, this Court must decide which of two cases the Government has cited and relied upon to follow, to wit: the decision of the Second Circuit in Wm. Passalacqua Builders, Inc. v. Resinick Developers South, Inc., 933 F.2d 131 (2d Cir. 1991), or the decision of the Seventh Circuit in International Fin. Serv. Corp. v. Chromas Technologies Canada, Inc., 356 F.3d 731 (7th Cir. 2004).

In Passalacqua, the plaintiffs brought suit in an effort to collect the unpaid portion of a judgment that had been entered against one of the defendants pursuant to an arbitration award. The plaintiffs sought to impose liability upon the other defendants under a piercing the corporate veil theory. The District Court held that the claims under that theory would be tried to a jury. Upon appeal, the Second Circuit affirmed. To determine whether the District Court had correctly concluded that claims under a piercing the corporate veil theory were appropriately resolved by a jury, in accordance with the Seventh Amendment, that court applied the two-part test set forth in Tull v. United States, 481 U.S. 412, 417-418 (1987), and reiterated in Granfinanciera. With respect to the first prong, the Passalacqua court engaged in a historical analysis of the nature of claims under the theory of piercing the corporate veil, concluding that the ancient nature of an action to disregard the corporate form had both equitable and legal antecedents. 933 F.2d

at 136.[13]  Turning to the second-prong of the test, whether the nature of the remedy sought is legal or equitable, the Second Circuit noted that the plaintiffs were seeking to enforce a money judgment obtained against one of the defendants and that the fact that the plaintiffs were seeking such indicated that it was a legal action.[14]  Id.  In the absence of any indication to the contrary, the Passalacqua court concluded that the plaintiffs were seeking a legal remedy and that the Seventh Amendment mandated a jury trial.  Id.  The court also noted that whether the corporate form is appropriately ignored, with liability being imposed upon related corporations and/or shareholders, raise fact questions normally resolved by juries.  Id. at 137.

In Chromas, the plaintiff brought an action for breach of contract against the corporation with which it had entered into the contract.  The plaintiff also set forth a claim against a related corporation ("related corporation"), seeking to recover for the breach of that contract under a piercing the corporate veil theory.[15]  The piercing the corporate veil theory was tried to a jury, which found for the plaintiff.

---

[13]The Second Circuit wrote:
>These sources support the proposition that the nature of the ancient action disregarding the corporate form had equitable and legal components.  Having examined the way this issue was treated historically, we turn next to examine the remedy sought.

933 F.2d at 136.

[14]In support of the latter proposition, the Passalacqua court cited Pernell v. Southall Realty, 416 U.S. 363, 370 (1974) (writing that "where an action is simply for the recovery … of a money judgment, the action is one at law") (internal quotation marks and citation omitted); and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 476 (1962) (noting that, insofar as complaint requests a money judgment, "it presents a claim which is unquestionably legal").  933 F.2d at 136.

[15]The plaintiff did not have a contractual relationship with the related corporation.

- 16 -

On appeal, the Seventh Circuit concluded that the District Court had erroneously submitted that theory to a jury for resolution. To reach that conclusion, the Seventh Circuit applied the two-part test set forth in Tull and Granfinanciera. The Chromas court followed the Second Circuit's decision in Passalacqua and concluded that the first prong of that test was inconclusive, given that the theory of piercing the corporate veil has its roots in both law and equity. 356 F.3d at 736. The Seventh Circuit then turned to the nature of the remedy, concluding that it was equitable. As an initial matter, the Seventh Circuit, unlike the Second Circuit in Passalacqua, held that the remedy being sought was piercing the corporate veil (i.e., imposing liability upon the related corporation for another's breach of contract), rather than one attempting to obtain a money judgment. Id. at 737. The Chromas court then applied Illinois law in order to determine whether the nature of the remedy of piercing the corporate veil was legal or equitable. Id. The Seventh Circuit held that this remedy was equitable, given that Illinois courts would pierce the corporate veil when corporate status had been used to perpetrate an injustice or inequity. Id at 737-39.

      This Court will follow the approach adopted by the Seventh Circuit in Chomas. With its piercing the corporate veil theory, the Government seeks the remedy of disregarding the corporate separateness of Senser Metal and, thus, imposing liability derivatively upon Saul Senser. As the Seventh Circuit recognized, the Passalacqua court took too broad an approach, in concluding that a party has a right to have a jury determine whether to pierce the corporate veil, because of the Passalacqua court's belief that a "jury trial does have to include all or nothing." 356 F.3d at 737. To the contrary, under the Seventh Amendment, a jury can be

called upon to decide some issues, while a court will resolve others.[16]  Herein, the three-prong test developed by the Ohio Supreme Court in <u>Belvedere Condominium Unit Owners Assn. v. R.E. Rorak, Cos., Inc.</u>, 67 Ohio St.3d 274, 288, 617 N.E.2d 1075, 1086 (1993) will be applied to determine whether to pierce Senser Metal's corporate veil and to hold Saul Senser derivatively liable for the actions of that corporation.  The question of Senser Metal liability has been previously determined by this Court.  <u>See</u> Doc. #487 at 115 (concluding that the uncontroverted evidence establishes that Senser Metal sold batteries to the operators of USL, which were processed at the USL Site).  The amount of response costs incurred by the Government will, if necessary,[17] be determined by the jury deciding whether Saul Senser is directly liable under § 107(a).  Therefore, this Court need only decide whether the Government has met its burden regarding the three-prong test set forth in ¶ 3 of the syllabus of <u>Belvedere</u>.

Accordingly, this Court turns to Ohio law in order to decide whether the nature of the remedy of piercing the corporate veil is legal or equitable.[18]  In ¶ 3 of the syllabus in <u>Belvedere</u>, the Ohio Supreme Court held:

---

[16]That principle is most frequently applied in cases where injunctive relief and damages are both sought for the same alleged wrong.  While the jury will decide common issues of liability and issues particular to claim for damages, the court will resolve all issues that are peculiar to the request for injunctive relief.

[17]The Government has a pending motion seeking partial summary judgment on that issue.  <u>See</u> Doc. #680.

[18]The Sixth Circuit has held that, in an action under CERCLA, state law must be applied to determine whether a corporate veil can be pierced.  <u>See</u> <u>Carter Jones Lumber Co. v. LTV Steel Co.</u>, 237 F.3d 745, 746 n. 1 (6th Cir.), <u>cert</u>. <u>denied</u>, 533 U.S. 903 (2001); <u>Donahey v. Bogle</u>, 129 F.3d 838, 843 (6th Cir. 1997), <u>vacated on other grounds</u>, 524 U.S. 924 (1998), <u>reinstated</u>, 2000 WL 977376 (6th Cir. 2000).

>   3.  The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

67 Ohio St.3d at 275, 617 N.E.2d at 1077.  In Taylor Steel, Inc. v. Keeton, 417 F.3d 598 (6th Cir. 2006), the Sixth Circuit reviewed Ohio law and held that the second-prong of the Belvedere test is satisfied by "a harmful, unfair, unjust, inequitable, or wrongful act rather than solely a criminal one."  Id. at 609-10.  Accord, AT&T Global Information v. Union Tank Car Co., 29 F. Supp.2d 857, 867-68 (S.D.Ohio 1998).  Just as the Seventh Circuit concluded in Chromas that requiring proof that a corporate veil was used to perpetrate an injustice or inequity renders the remedy of piercing the corporate veil equitable in nature, the type of acts recognized in Taylor as sufficient to justify such relief causes this Court to conclude that said remedy is equitable under Ohio law.

Accordingly, this Court concludes that Saul Senser is not entitled to a jury trial on the Government's claim predicated upon a piercing the corporate veil theory and sustains the Government's Motion to Strike Jury Demand of Defendant Saul Senser (Doc. #713), to that extent.


September 12, 2007

>                        /s/ Walter Herbert Rice
>            WALTER HERBERT RICE, JUDGE
>            UNITED STATES DISTRICT COURT

- 20 -

Copies to:

Counsel of record.

Case: 3:91-cv-00309-WHR Doc #: 735 Filed: 09/12/07 Page: 20 of 20  PAGEID #: 4397