## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | Case No. 3:91cv309 |
| vs. | : |
| | JUDGE WALTER HERBERT RICE |
| ATLAS LEDERER COMPANY, et al., | : |
| Defendants. | : |

---

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COSTS (DOC. #680)

---

This litigation arises under the Comprehensive Environmental Response,

Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq. Plaintiff

United States of America has settled its claims with the members of the United

Scrap Lead Respondent Group ("Respondent Group"). Pursuant to § 107(a) and

§ 113(f) of CERCLA, 42 U.S.C. § 9607(a) and § 9613(f), the United States and

the Respondent Group now seek to recover the costs they have incurred to

remediate environmental contamination at the United Scrap Lead Company

Superfund Site ("USL Site" or "Site") in Troy, Ohio, from other potentially

responsible parties ("PRPs"). At that Site, United Scrap Lead Company ("USL")

collected used car, truck and industrial batteries from numerous businesses and

individuals. The batteries were broken open to remove the lead cores and lugs, which caused the USL Site to become contaminated with hazardous substances, including lead and lead contaminated sulphuric acid. As a result of that contamination, the Site has been included on the National Priorities List. See 40 C.F.R. Pt. 300, App. B. The Respondent Group has funded the remedy which has resulted in the cleanup of that hazardous waste site.

In its Second Amended Complaint (Doc. #649), the Government alleges that it has incurred response costs, which it is seeking to recover from, among others, Saul Senser,[1] Senser Metal, Inc. ("Senser Metal"), Caldwell Iron & Metal ("Caldwell"), Ace Iron & Metal, Inc. ("Ace"), Larry Katz ("Katz") and Alan Levine ("Levine"). This case is now before the Court on the Government's Motion for Partial Summary Judgment on Costs (Doc. #680), with which it seeks an order that it is entitled to recover response costs and prejudgment interest in the sum of $7,810,917.66. All six of those Defendants have opposed the Government's request for partial summary judgment in that regard. See Doc. #688 (Memorandum in Opposition filed by Saul Senser and Senser Metal); Doc. #689 (Memorandum in Opposition filed by Caldwell, Ace, Katz and Levine).[2] As a means of analysis, the Court will initially set forth the procedural standards which are applicable to all motions seeking summary judgment, partial or otherwise, following

---

[1]As Saul Senser has died, this Court has granted the Government's motion to substitute his Estate and the Executor of his Estate, in accordance with Rule 25 of the Federal Rules of Civil Procedure. See Doc. #730. For sake of consistency, however, the Court utilizes the name Saul Senser throughout this Decision.

[2]When the Court refers to those six Defendants collectively, it will use the phrase "Opposing Defendants."

which it will turn to the arguments of the parties in support of and in opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323. See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a

- 3 -

matter of law. Fed.R.Civ.P. 50). Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more

- 4 -

credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

As indicated, the Government seeks summary judgment on the amount of response costs it has incurred at the USL Site, as well as prejudgment interest on those costs, arguing that the evidence establishes as a matter of law that it is entitled to recover the sum of $7,810,917.66. That figure includes salaries paid to employees of the United States Environmental Protection Agency ("EPA"), the indirect costs incurred by the EPA (i.e., overhead expenses), the amount paid by the EPA to its contractors, the amount paid to other federal agencies including the United States Army Corps of Engineers, prejudgment interest in the sum of

$2,495,451.78, and attorney's fees incurred by the United States Department of
Justice ("DOJ") in the sum of $1,214,698.27, nearly 70% of which represents the
indirect costs incurred by the DOJ in connection with its activities regarding the
USL Site. According to the Government, that sum does not include any costs
related to the initial remedy adopted for the remediation of that hazardous waste
site and set forth in the 1988 Record of Decision ("ROD").[3] Memorandum in
Support of Motion for Partial Summary Judgment on Costs ("Memorandum in
Support") (Doc. #680-2) at 5. The Government indicates that, as a result, it is not
seeking compensation for "any EPA personnel costs incurred between October 1,
1988 (shortly after the 1988 ROD was issued on September 16, 1988), and July
1, 1995, by which time [the] EPA had shifted to negotiations over the proposed
remedy that was eventually adopted." Id. at 5-6. In addition, the Government
states that it is not attempting to recover any expenditures it made to its private
contractors or to other government agencies which are related to the initial
remedy. Id. The Government does indicate that it intends to attempt to recover
those costs, if the remaining Defendants' combined ability to pay exceeds the
amount it is currently seeking and this litigation goes to trial.[4] Id. at 5 n. 11. The
Government has supported its Motion with nearly 1250 pages of exhibits and eight
lengthy declarations, as well as a Memorandum in Support and a Statement of

---

[3]The Government refers to that remedy as an "innovative remedy." This Court has
previously used the "an untried, innovative and expensive remedy" to describe it.
See Doc. #734 at 8.

[4]The Government also indicates that, in that event, it will seek to recover costs
which are continuing to incur at the USL Site.

- 6 -

Undisputed Facts ("SUF"), in support thereof, both of which are attached to its Motion (Doc. #680).[5]

The 22-page SUF sets forth the factual basis for the Government's assertion that it is entitled to summary judgment on the amount of costs and prejudgment interest it is seeking to recover. Each statement in the SUF is supported by a citation to a declaration or other evidentiary material. A review of all evidentiary materials reveals that the Government has submitted evidence demonstrating that it incurred and paid the costs in question as a result of its efforts to clean up the USL Site. Indeed, the Opposing Defendants do not collectively or individually challenge that the Government actually incurred or paid those costs. In addition, three declarations discussed below demonstrate, in the absence of evidence to the contrary from the Opposing Defendants, that the Government is <u>not</u> seeking to recover any costs incurred as a result of the adoption of the initial remedy that was subsequently abandoned.

Nevertheless, the Opposing Defendants raise a number of arguments as to why this Court should deny the Government's request for partial summary judgment. In their Memorandum in Opposition (Doc. #688), Saul Senser and Senser Metal present six arguments in opposition to the Government's Motion, to wit: 1) that a trial must be had, because of the delay between the Government's issuance of the 1988 ROD and that issued nine years later in 1997; 2) that a trial is necessary, because the Government is seeking an unreasonable amount of attorney's fees; 3) that some of the items of costs which the Government seeks to

---

[5]The Government has supported the assertions in the SUF with citations to declarations and other evidentiary materials.

- 7 -

recover are inconsistent with the National Contingency Plan, under an arbitrary and capricious standard; 4) that the Government's failure to explain properly certain cost records and its method of calculating indirect costs, as well as mathematical errors, make summary judgment inappropriate; 5) that the Plaintiff's conduct during this litigation makes an award of indirect costs inappropriate; and 6) that the Government is not entitled to prejudgment interest. In their Memorandum in Opposition (Doc. #689), Caldwell, Ace, Katz and Levine argue that the Government is not entitled to summary judgment for the following three reasons, to wit: 1) that the Government is not entitled to summary judgment on the issue of prejudgment interest, because the evidence raises a genuine issue of material fact as to whether the Government complied with the requisite notice provision and whether the Government is attempting to recover prejudgment interest on the abandoned initial remedy; 2) that the evidence raises a genuine issue of material fact as to whether the Government is entitled to summary judgment on the $1,214,698.27 it seeks for attorney's fees; and 3) that the evidence raises a genuine issue of material fact as to whether the Government is attempting to recover indirect costs associated with the initial remedy, because it is not altogether clear what indirect costs the EPA may have accrued as a result of that remedy or its abandonment. As a means of analysis, the Court will address the Defendants' arguments in opposition to summary judgment in the above order, addressing similar challenges together. However, before engaging in that analysis, the Court will review the applicable legal standards.

Section 107(a)(4)(A) of CERCLA provides that a person who is liable thereunder shall be responsible for "all costs of removal or remedial action incurred

by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A) (emphasis added). The National Contingency Plan ("NCP") is a body of regulations, set forth in 40 C.F.R. Part 300, which defines procedures and standards for waste site cleanups and gives consistency and cohesiveness to response planning and actions, under CERCLA. See Redwing Carriers, Inc. v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996); United States v. Chrysler Corp., 168 F. Supp.2d 754, 763 (N.D.Ohio 2001); AlliedSignal, Inc. v. Amcast Intern. Corp., 177 F. Supp.2d 713, 739 (S.D.Ohio 2001). See also, Matter of Bell Petroleum Services, Inc., 3 F.3d 889, 894 (5th Cir. 1993) (noting that the NCP "identifies methods for investigating the environmental and health problems resulting from a release or threatened release and criteria for determining the appropriate extent of response activities"). The party arguing that response costs incurred by the Government are inconsistent with the NCP has the burden of proving that inconsistency. See e.g., United States v. R.W. Meyer, Inc., 889 F.2d 1497, 1508 (6th Cir. 1989), cert. denied, 494 U.S. 1057 (1990); United States v. Northeastern Pharmaceutical and Chemical Co., 810 F.2d 726, 747 (8th Cir. 1986), cert. denied, 484 U.S. 848 (1987); United States v. Hardage, 982 F.2d 1436, 1442 (10th Cir. 1992); United States v. E.I. DuPont DeNemours and Co. Inc., 432 F.3d 161, 178 (3d Cir. 2005) (en banc). "To establish an EPA response action is inconsistent with the [NCP], a responsible party must show the EPA acted arbitrarily and capriciously in choosing the response action." Id. at 179 (citing 42 U.S.C. § 9613(j)(2)).[6] Accord Matter

---

[6]Section 9613(j)(2), § 113(j)(2) of CERCLA, provides:
(j) Judicial review
\* \* \*

- 9 -

of Bell, 3 F.3d at 905. See also United States v. Azko Coatings of Am. Inc., 949 F.2d 1409, 1423-24 (6ᵗʰ Cir. 1991) (applying the arbitrary and capricious standard of review to decision of the EPA to enter into consent decree with potentially responsible parties).

First, Saul Senser and Senser Metal argue that a trial must be had, because of the delay between the Government's issuance of the 1988 ROD and that issued nine years later in 1997. See Doc. #688 at 4. The initial remedy for the USL Site was set forth in a ROD issued in 1988. That remedy was abandoned, and the remedy that was ultimately utilized was set forth in a ROD issued nine years later in 1997, thus causing a delay in the cleanup of that Site. These Defendants base this contention on the assertions that untold thousands of dollars must have been spent and wasted developing the initial remedy and that the Government has failed to distinguish the wasted funds from those which were not wasted. These Defendants have not, however, pointed to any particular expenditure by the Government which was wasted as a result of the delay. As is indicated above, this Court is not obligated to wade through the voluminous summary judgment record before the Court, in order to look for evidence demonstrating that there is a genuine issue of material fact. Interroyal Corp., 889 F.2d at 111. See also, Chicago Title Ins. Corp. v. Magnuson, 487 F.3d 985, 995 (6ᵗʰ Cir. 2007) (noting that a District Court "is not required to 'search the entire record to establish that it

---

(2) Standard

In considering objections raised in any judicial action under this chapter, the court shall uphold the President's decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.

- 10 -

is bereft of a genuine issue of material fact'") (quoting Street v. J.C. Bradford &
Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989)). Given that Saul Senser and Senser
Metal have not identified any wasted expenditures, the Court rejects that
proposition of Saul Senser and Senser Metal that summary judgment is
inappropriate, because of the delay between the Government's issuance of the
1988 ROD and that issued nine years later in 1997.

Second, Saul Senser and Senser Metals argue that the Government is not
entitled to summary judgment, because the Government is seeking an unreasonable
amount of attorney's fees, which, as a result, are inconsistent with the NCP. In
addition, Caldwell, Ace, Katz and Levine argue that the evidence raises a genuine
issue of material fact as to whether the Government is entitled to summary
judgment on the $1,214,698.27, it seeks for those fees. As a means of analysis,
this Court will initially set forth the legal standards which are applicable to the
question of whether attorney's fees are recoverable in a cost recovery action
brought the Government under § 107(a) of CERCLA, following which it will turn to
the question of whether the evidence raises a genuine issue of material fact as to
whether the Government is entitled to recover the attorney's fees it seeks herein.

In Key Tronic Corp. v. United States, 511 U.S. 809 (1994), the Supreme
Court held that "CERCLA § 107 does not provide for the award of private litigants'
attorney's fees associated with bringing a cost recovery action," because
attorney's fees for those activities did not constitute "enforcement activities."[7]
Id. at 819. The Key Tronic Court stated that it "offer[ed] no comment on the

---

[7]Section 107(a) authorizes private parties to recover response costs, which are
defined to include "enforcement activities." See 42 U.S.C. § 9601(25).

extent to which [the phrase enforcement activity] forms the basis for the Government's recovery of attorney's fees through § 107 ...." Id. (footnote omitted). Subsequent to Key Tronic, courts have uniformly held that the Government may recover the attorney's fees it incurred to litigate a cost recovery action under § 107(a) of CERCLA, because § 107(a)(4)(A) entitles it to recover "all" the costs it has incurred. See e.g., United States v. Chapman, 146 F.3d 1166 (9ᵗʰ Cir. 1998); United States v. Dico, 266 F.3d 864, 878 (8ᵗʰ Cir. 2001), cert. denied, 535 U.S. 1095 (2002); United States v. E.I. DuPont DeNemours & Co., Inc., 341 F. Supp.2d 215, 239-40 (W.D.N.Y. 2004). In Dico, the Eighth Circuit applied Northeastern Pharmaceutical, supra, to conclude that the party opposing the Government has the burden of demonstrating that the attorney's fees it is seeking to recover are inconsistent with the NCP. 266 F.3d at 878-79.

Saul Senser and Senser Metal argue that the attorney's fees which the Government seeks to recover are inconsistent with the NCP, because the amount of compensation requested for same is unreasonable. See Doc. #688 at 5-6. In support of that proposition, those Defendants rely upon the Ninth Circuit's decision in Chapman, supra, holding that attorney's fees must be awarded to the Government in accordance with the analytical framework established by the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424 (1983). 146 F.3d at 1176. The Government, in contrast, argues in its Reply Memorandum that this Court should not follow Chapman, supra, and apply Hensley as the benchmark for the amount of attorney's fees to included in its cost recovery action under § 107(a). See Doc. #702 at 7-9. Indeed, the Government argues that it can recover attorney's fees, regardless of their reasonableness. Id. In support thereof, the

- 12 -

Government relies upon, inter alia, the decision of the Sixth Circuit in R.W. Meyer, supra, wherein the court addressed the question of whether the Government could recover indirect costs in an action under § 107(a) of CERCLA. The Sixth Circuit concluded that indirect costs were recoverable, because § 107(a)(4)(A) authorizes the Government to recover "all" costs incurred, and that "those responsible for hazardous waste must bear the full cost of cleanup actions." 889 F.2d at 504 (emphasis in the original). The Sixth Circuit did not, however, address the issue of whether the Government could recover only its reasonable costs, although the language used by the R.W. Meyer court tends to infer no such conclusion. Moreover, many courts have noted that § 107(a)(4)(A), which provides that the Government can recover all costs it has incurred, does not contain a reasonableness component, unlike § 107(a)(4)(B), which governs actions by private parties, and, thus, have concluded that the Government may recover the costs it has incurred without ascertaining their reasonableness. See e.g., Northeastern Pharmaceutical, 810 F.2d at 747-48 (noting that "'all costs' incurred by the government that are not inconsistent with the NCP are conclusively presumed to be reasonable" and that "CERCLA does not refer to 'all reasonable costs' but simply to 'all costs'"); Hardage, 982 F.2d at 1442-43 (following Northeastern Pharmaceutical, supra, and noting that "[o]nly response actions--i.e., removal or remedial actions--can be inconsistent with the NCP, which can be demonstrated by a showing that the government's choice of response action was arbitrary and capricious and that "[a]s long as the government's choice of response action is not inconsistent with the NCP, its costs are presumed to be reasonable and therefore recoverable"); E.I. DuPont DeNemours & Co., Inc., 341 F. Supp.2d at 242 (relying

- 13 -

upon Northeastern Pharmaceutical, supra, and holding that reasonableness is not a factor when assessing the amount of attorney's fees to be included as part of the award in cost recovery actions brought by the Government under § 107(a)); United States v. Domenic Lombardi Realty, Inc., 334 F. Supp.2d 105 (D.R.I. 2004) (same). See also, United States v. Azko Nobel Coatings, Inc., 990 F. Supp. 892 (E.D.Mich. 1998).[8] This Court is convinced that the foregoing decisions correctly interpret the pertinent statutory language of CERCLA. The contrary position, set forth in Chapman, supra, is not persuasive, because the Ninth Circuit did not even discuss therein the language of § 107(a)(4)(A), i.e., that the Government can recover all costs. Moreover, the decisions concluding that the reasonableness of the Government's costs is not an issue in a cost recovery action under § 107(a) are consistent with the language utilized by the Sixth Circuit in R.W. Meyer, supra, wherein it stressed that the Government may recover all its costs. Therefore, this Court will follow those decisions, rejecting the contention of Saul Senser and Senser Metal that the Court must deny the Government's motion as it relates to

---

[8]In Azko Nobel Coatings, the District Court wrote:

> The parties agree that Section 107 of the Comprehensive
> Environmental Response, Compensation, and Liability Act of 1980
> ("CERCLA"), 42 U.S.C. 9607, allows the United States to recover "all costs
> ... not inconsistent with the National Contingency Plan." As a threshold
> matter, I stress that the NCP does not require response cost items to be
> "reasonable," "proper" or "cost-effective" in order for the United States to
> recover its response costs. My inquiry is limited to a determination that the
> costs arose out of actions that comported with the NCP. See, United States
> v. Kramer, 913 F. Supp. 848, 863 (D.N.J. 1995). As stated in United
> States v. American Cyanamid Co., 786 F. Supp. 152, 161 (D.R.I. 1992),
> "CERCLA imposes no obligation on the United States to minimize its
> response costs for the benefit of responsible parties who are liable for
> costs."

990 F. Supp. at 895 (footnote omitted).

attorney's fees, because the amount requested is unreasonable under Hensley, supra.

Caldwell, Ace, Katz and Levine argue that it would be inappropriate to hold them responsible for all of the attorney's fees incurred by the Government, since they were not joined as Defendants in this litigation until after a significant amount of that expense had been incurred. This Court cannot agree with these Defendants. Liability under CERCLA is joint and several, unless "two or more persons independently are responsible for a single harm that is divisible." R.W. Meyer, 889 F.2d at 1507. Despite the fact that they were joined as Defendants after this litigation had been pending, they have failed to show how the Government's attorney's fees are allocable among those who did not clean up the USL Site, inaction necessitating the Government to incur the attorney's fees it is seeking to recover herein.[9]

Accordingly, this Court rejects the Opposing Defendants challenges to the attorney's fees component of the Government Motion for Partial Summary Judgment on Costs (Doc. #680).

Third, Saul Senser and Senser Metal contend that some of the items of costs which the Government seeks to recover are inconsistent with the National Contingency Plan, under the arbitrary and capricious standard. In particular, they

_____

[9]Caldwell, Ace, Katz and Levine also argue that the Court should overrule the Government's request for summary judgment as it relates to attorney's fees, in order to permit them to cross-examine representatives of the DOJ concerning the component of those fees constituting indirect costs. The Court rejects that assertion, because these Defendants could have cross-examined such representatives by deposing them. Notably, these Defendants have not filed an affidavit in accordance with Fed. R. Civ. P. 56(f), requesting additional time to respond to the Government's motion in order to take such depositions.

focus upon the amount that the Government is attempting to recover for its payments to private contractors. They argue that, by seeking to recover the portion of those payments which is related to the initial, abandoned remedy, the Government is acting in an arbitrary and capricious manner. Since the Government has not attempted to recover any amount paid to a contractor for work related to that remedy, the Court cannot agree with Saul Senser and Senser Metal that this is a reason to deny the Government's request for partial summary judgment.

The Government has supported its request to recover the amount it has paid to both private contractors and other governmental agencies, such as the Army Corps of Engineers, with the Declarations of Julie Sidlo ("Sidlo"),[10] a cost accountant employed by the EPA in Region 5; Margaret Herring ("Herring"),[11] a civil investigator employed by the EPA in Region 5; and John O'Grady ("O'Grady"), a remedial project manager employed by the EPA in Region 5. In all three of those Declarations, the declarant indicated that she or he excluded all costs associated with the initial, abandoned remedy. See Sidlo Declaration at ¶¶ 13-16; Herring Declaration at ¶ 9; O'Grady Declaration at ¶¶ 11-12.[12] Opposing Defendants have offered no evidence to the contrary. Accordingly, the Court rejects the argument of Saul Senser and Senser Metal that the evidence raises a genuine issue of material fact on the question of whether some of the costs the Government is

---

[10]Sidlo's Declaration is attached to the Government's Motion for Partial Summary Judgment on Costs (Doc. #680) as Exhibit 4.

[11]Herring's Declaration is attached to the Government's Motion for Partial Summary Judgment on Costs (Doc. #680) as Exhibit 5.

[12]O'Grady's Declaration is attached to the Government's Motion for Partial Summary Judgment on Costs (Doc. #680) as Exhibit 3.

seeking to recover, which it incurred for its contractors and other governmental agencies, are inconsistent with the NCP, under the arbitrary and capricious standard.

Fourth, Saul Senser and Senser Metal argue that the Government's failure to explain certain cost records properly and its method of calculating indirect costs, as well as mathematical errors, make summary judgment inappropriate. These Defendants have not, however, identified which cost records the Government failed to explain properly, or how its method of calculating indirect costs was deficient. Nor have they pointed to any mathematical computations which they believe are erroneous. Once again, this Court is not obligated to search the voluminous summary judgment record before the Court, in order to find evidence demonstrating the existence of a genuine issue of material fact. Chicago Title Ins. Corp., 487 F.3d 995; Interroyal Corp., 889 F.2d at 111. Given that Saul Senser and Senser Metal have not identified any evidence which could raise a genuine issue of material fact that the Government failed to explain properly any cost records and/or its method of calculating indirect costs, or that it made mathematical errors, the Court rejects their proposition that summary judgment is inappropriate as a result of these asserted shortcomings.

Fifth, although the Sixth Circuit has held that the Government may recover its indirect costs in a cost recovery action under § 107(a) (R.W. Meyer, 889 F.2d at 1502-04), Saul Senser and Senser Metal argue that the Government's conduct during this litigation makes an award of indirect costs inappropriate. In support of that proposition, these Defendants rely upon the decision of the First Circuit in United States v. Ottati & Goss, Inc., 900 F.2d 429 (1st Cir. 1990). Therein, the

District Court denied the Government's request to recover its indirect costs as part of its cost recovery action under § 107(a) of CERCLA, as a sanction, the District Court having concluded that the "cavalier and hubristic" actions of the EPA during the course of that litigation warranted the denial of such a recovery. Id. at 444. The First Circuit held that ordinarily a District Court must include indirect costs in an award of response costs, although it possesses the discretion to deny the recovery of such costs as a sanction. Id. The First Circuit acknowledged that the lawsuit had taken an excessive number of years to litigate, that the Government's counsel had frequently failed to express the technical issues raised therein in plain English and that the Government may have caused a significant amount of contamination through its negligent cleanup of the site. Id. However, the First Circuit concluded that "[t]o find a case worrying, however, to believe that 'there must be a better way,' to wonder about the government's priorities in the face of other, apparently more serious, environmental demands for 'cleanup' time and effort[,] is not to find the type of governmental activity that may call for sanctions." Id. at 445. Since it was unable to ascertain from the massive record what the Government or its attorneys had done which warranted sanctions, the First Circuit remanded the matter to the District Court so that it could "redetermine the 'sanctions' matter, after which, if it assesses sanctions, it will state the specific factual, and legal, basis upon which they rest, including the reason to equate the amount of the sanction with the amount of the indirect costs."

Assuming for sake of argument that the Sixth Circuit would follow the holding of the First Circuit and hold that this Court possesses the discretion to decline to include indirect costs in an award of response costs as a sanction

against the Government, Saul Senser and Senser Metal have not identified the type of misconduct which would warrant the imposition of same. Although this litigation has spanned far too many years, this Court cannot lay that at the feet of the Government alone. Rather, all parties, including the Court, bear some of the responsibility for that delay. It should be remembered, for example, that this Court stayed this litigation for a number of years at the request of the Defendants, while the Government reexamined the initial remedy it had chosen. That delay was quite beneficial to parties such as Senser Metal, in that it resulted in the adoption of a much less expensive remedy for the USL Site. Saul Senser and Senser Metal have not identified any misconduct by the Government that could warrant the imposition of a sanction in the form of the denial of recovery of indirect costs.[13]

Accordingly, the Court rejects the assertion of Saul Senser and Senser Metal that the evidence raises a genuine issue of material fact concerning the question of whether the Government's conduct during this litigation makes an award of indirect costs inappropriate.

Sixth, all Opposing Defendants argue that the evidence raises a genuine issue of material fact concerning the Government's request to recover prejudgment interest. Section 107(a) of CERCLA provides that prejudgment interest "shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned." In its motion, the

---

[13]Saul Senser and Senser Metal do not specifically argue that the Court should impose such a sanction on the Government, as a result of its decision to adopt the initial remedy, which it subsequently abandoned. This Court, however, would have rejected such an argument. Simply stated, adopting a remedy which is subsequently withdrawn does not constitute the type of misconduct warranting sanctions, in the absence of evidence that it was done for an improper purpose. These Defendants have not presented such evidence.

Government has computed the award of prejudgment interest to which it argues it
is entitled from the dates upon which funds were expended, thus apparently taking
the position that said dates were the later of the events referred to in the above-
quoted part of § 107(a) of CERCLA. Since, as will be discussed below, there is a
genuine issue of material fact on the question of whether either of the demand
letters was properly served on the Opposing Defendants, it is impossible to say, at
this juncture, which was the later of the two events, particularly since there is no
evidence that any other form of written demand was made. This Court, therefore,
is currently without the means to calculate any sum of prejudgment interest,
lacking, as it does, any beginning date upon which to base that calculation.

      According to the Government, its written demand for payment was made on
June 21 [sic], 1991. See Doc. #680-2 at 11. That assertion is supported by
Sidlo's Declaration. In ¶ 111 of that document, she states that the Government
"filed a demand against the Defendants ... on June 20, 1991." Doc. #680 at Ex.
4, p. 51, ¶ 111. Sidlo also indicates that a copy of that demand letter is attached
thereto as Attachment X. Id. With that demand letter (Attachment X), dated June
20, 1991, the EPA demanded the payment of $2,043,563.95. Doc. #680 at Ex.
4, Attachment X. That demand letter indicated that it had been sent by certified
mail. Id. Attached to that letter is a copy of an earlier letter, dated June 26,
1989, with which the Government demanded the payment of $1,328,956.60. Id.
The 1989 demand letter also indicated that it had been sent by certified mail. Id.
However, the Government did not submit with its motion any evidence
demonstrating that either of those letters was received by any of the Opposing
Defendants. Although the Government has submitted with its Reply Memorandum

(Doc. #702) what appear to be copies of return receipts signed by agents of Senser Metal, Caldwell and Ace, the Government has not offered any evidence remotely authenticating those documents. Moreover, even if this Court were to conclude that those three Defendants are liable for prejudgment interest, because they received copies of the 1989 demand letter, the Court would nevertheless deny the branch of this motion directed at recovery of prejudgment interest, as it relates to Katz and Saul Senser.[14] The Government argues that Katz is liable for prejudgment interest, even if he did not receive notice, because he was a general partner of Caldwell and such a partner is liable for the debts of the partnership. In its Decision of September 28, 2006, however, this Court concluded that the evidence raised a genuine issue of material fact as to whether that partnership disposed of lead batteries at the USL Site, at the time Katz was a general partner. See Doc. #705 at 8-9. In addition, although the Government argues that lack of notice to Saul Senser does not preclude imposing prejudgment interest upon him, because he is liable under a piercing the corporate veil theory, this Court has not concluded herein that he is, as a matter of law, so liable.

Accordingly, the Court overrules the Government's Motion for Partial Summary Judgment on Costs (Doc. #680), as it relates to prejudgment interest.

Seventh, Caldwell, Ace, Katz and Levine argue the evidence raises a genuine issue of material fact as to whether the Government is attempting to recover indirect costs associated with the initial remedy, because it is not altogether clear

---

[14]In its Decision of September 28, 2006, this Court concluded that Ace was a sole proprietorship of Levine and that, therefore, he was liable for the debts incurred by Ace. See Doc. #705 at 5. Therefore, if Ace is liable for prejudgment interest, as a result of having received notice, Levine is equally liable for same.

what indirect costs the EPA may have accrued as a result of that remedy or its abandonment. A detailed description of the method by which the EPA calculates indirect costs is set forth in the 17-page Declaration of Thomas DeHoff ("DeHoff"), a CPA who is employed by the EPA as an Associate Staff Director in the Program Costing Staff of the Office of Financial Management.[15] In ¶ 23 of her Declaration, Sidlo indicates that the Government is seeking to recover $918,509.67 for the EPA's indirect costs. In addition, as is indicated above, Sidlo has indicated therein that she has excluded all costs related to the initial remedy from the items which she discusses in her Declaration. Sidlo Declaration at ¶¶ 13-16. Caldwell, Ace, Katz and Levine have not pointed to any evidence before the Court tending to demonstrate that the Government is attempting to recover indirect costs associated with the initial remedy. Accordingly, the Court rejects the argument of those Defendants that the evidence raises a genuine issue of material fact as to that question.

Based upon the foregoing, the Court sustains in part and overrules in part the Government's Motion for Partial Summary Judgment on Costs (Doc. #680). That motion is overruled as it relates to the request for prejudgment interest and is

---

[15]DeHoff's Declaration is attached to the Government's Motion for Partial Summary Judgment on Costs (Doc. #680) as Exhibit 6.

otherwise sustained. As a consequence, the Court concludes, as a matter of law,

that the Government is entitled to recover costs in the sum of $5,315,465.88.[16]

September 20, 2007

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of record.

---

[16]That figure is a result of subtracting $2,495,451.78, the amount of prejudgment interest the Government seeks, from $7,810,917.66, the total amount being sought with this motion.

- 23 -