IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | :     Case No. 3:91cv309 |
| vs. | : |
| |     JUDGE WALTER HERBERT RICE |
| ATLAS LEDERER COMPANY, et al., | : |
| Defendants. | : |

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON INTEREST (DOC. #738)

This litigation arises under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq. Plaintiff United States of America has settled its claims with the members of the United Scrap Lead Respondent Group ("Respondent Group"). Pursuant to § 107(a) and § 113(f) of CERCLA, 42 U.S.C. § 9607(a) and § 9613(f), the United States and the Respondent Group now seek to recover the costs they have incurred to remediate environmental contamination at the United Scrap Lead Company Superfund Site ("USL Site" or "Site") in Troy, Ohio, from other potentially responsible parties ("PRPs"). At that Site, United Scrap Lead Company ("USL") collected used car, truck and industrial batteries from numerous businesses and individuals. The batteries were broken open to remove the lead cores and lugs,

which caused the USL Site to become contaminated with hazardous substances, including lead and lead contaminated sulphuric acid.  As a result of that contamination, the Site has been included on the National Priorities List.  See 40 C.F.R. Pt. 300, App. B.  The Respondent Group has funded the remedy which has resulted in the cleanup of that hazardous waste site.

In its Second Amended Complaint (Doc. #649), the Government alleges that it has incurred response costs, which it is seeking to recover from, among others, Saul Senser,[1] Senser Metal, Inc. ("Senser Metal"), Caldwell Iron & Metal ("Caldwell"), Ace Iron & Metal, Inc. ("Ace"), Larry Katz ("Katz") and Alan Levine ("Levine").  In its Decision of September 20, 2007, this Court sustained in part and overruled in part the Government's Motion for Partial Summary Judgment on Costs (Doc. #680), with which it had sought an order that it is entitled to recover response costs and prejudgment interest in the sum of $7,810,917.66.  See Doc. #737.  In particular, this Court concluded that, although summary judgment was warranted on the Government's request to recover costs in the sum of $5,315,465.88, it was not entitled to summary judgment on its request to recover prejudgment interest in the sum of $2,495,451.78.  Id. at 23.  With respect to prejudgment interest, this Court noted therein that § 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides that prejudgment interest "shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned."  Id. at 19.  The Court reasoned that, since there was a

---

[1]As Saul Senser has died, this Court has granted the Government's motion to substitute his Estate and the Executor of his Estate, in accordance with Rule 25 of the Federal Rules of Civil Procedure.  See Doc. #730.  For sake of consistency, however, the Court utilizes the name Saul Senser throughout this Decision.

- 2 -

genuine issue of material fact as to the date when the Government demanded a specified amount in writing from the Defendants, it was not possible to ascertain the date from which prejudgment interest had accrued. Id. at 20-21.

This case is now before the Court on the Government's Motion for Partial Summary Judgment on Interest (Doc. #738). With that motion, the Government requests that the Court enter partial summary judgment, concluding that "all defendants previously judged liable for costs at the United Scrap Lead Superfund Site … are jointly and severally liable for $3,390,618.47 in interest accrued through November 15, 2007." Doc. #738 at 1. This Court has previously held that Senser Metal, Caldwell, Ace and Levine are liable for costs. See Doc. #487 at 48-54 (concluding that the Government is entitled to summary judgment on its claim that Ace is liable as an arranger); Id. at 66-68 (concluding that the Government is entitled to summary judgment on its claim that Caldwell is liable as an arranger); Id. at 103-115 (concluding that the Government is entitled to summary judgment on its claim that Senser Metal is liable as an arranger); Doc. #590 (concluding that all non-settling PRPs are jointly and severally liable); Doc. #705 at 5 (concluding as a matter of law that Levine operated Ace as a sole proprietorship and that, therefore, he was liable for its actions). The Court has concluded, however, that there is a genuine issue of material fact as to whether Saul Senser or Katz is liable. See Doc. #705. Therefore, the Court can validly enter summary judgment in favor of the Government on its entitlement to recover prejudgment interest from Ace, Caldwell, Senser Metal and Levine, should the Court deem the Government so entitled, but not from Katz and Saul Senser. Indeed, the Government has not expressly requested that the Court enter summary

judgment against Katz and Saul Senser. All Defendants, except Saul Senser, have opposed the Government's request for partial summary judgment in that regard. See Doc. #740 (Memorandum in Opposition filed by Senser Metal); Doc. #741 (Memorandum in Opposition filed by Caldwell, Ace, Katz and Levine).² The Court will use the phrase "Opposing Defendants," when referring to Senser Metal, Katz, Levine, Ace and Caldwell collectively. The Government has filed a Reply Memorandum in support of its latest request for partial summary judgment. See Doc. #742. This Court begins its analysis, by setting forth the procedural standards it must apply whenever it rules on a motion for summary judgment, partial or otherwise.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

²Herein, this Court decides, inter alia, whether there is a genuine issue of material fact concerning the amount of prejudgment interest for which the non-settling PRPs will jointly and severally liable. Since Katz has opposed the Government's motion, that determination will be applicable to him, in the event that it is ultimately determined that he is liable, even though the Government has not expressly requested summary judgment against him. Saul Senser has not, however, opposed the Government's motion. Senser Metal argues that, as a result, Saul Senser has the right to respond in the future, if necessary. See Doc. #740 at 1 n. 1. The Government has not challenged that assertion in its Reply Memorandum (Doc. #742), and this Court does not address that contention.

- 4 -

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50).  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could

reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©. Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992)

("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

As indicated, the Government seeks summary judgment on the amount of prejudgment interest, $3,390,618.47, arguing that sum is the amount of prejudgment interest on the amount of response costs it has incurred at the USL Site,$5,315,465.88, which this Court has previously concluded the Government is entitled to recover.  The award of prejudgment interest is provided for in § 107(a) of CERCLA, 42 U.S.C. § 9607(a), and is mandatory. United States v. Consolidation Coal Co., 345 F.3d 409, 415 (6th Cir. 2003).  Under § 107(a), prejudgment accrues "from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned."  42 U.S.C. § 9607(a).  The Government has supported its motion with a number of declarations and other evidence, which have been presented to demonstrate that the evidence fails to raise genuine issues of material fact on the following questions, to wit: 1) that Senser Metal, Caldwell and Ace received written demand letters from the United States Environmental Protection Agency ("EPA") that were sent to them on June 29, 1989;[3] and 2) that the amount of prejudgment interest

---

[3]Under Ohio law, "[a] sole proprietorship has no legal identity separate from that of the individual who owns it." Patterson v. V&M Body Shop, 63 Ohio St.3d 573, 574-75, 589 N.E.2d 1306, 1308 (1992).  Therefore, if Ace, the proprietorship,

the Government is entitled to recover pursuant to § 107(a) has been properly calculated.  Ace, Caldwell, Levine and Katz challenge both of those propositions, while Senser Metal focuses on the question of whether the amount of prejudgment interest being sought by the Government has been properly calculated.  As a means of analysis, the Court will address the two issues presented by the Government in the above order.

I.  Written Demand Letter

In its Decision of September 20, 2007, the Court noted that the Government had computed prejudgment interest from the later of the date that every expenditure for costs had been made, or when it had provided the requisite written demand to Senser Metal, Ace and Caldwell.  See Doc. #737 at 19-20.  The Court rejected the Government's request for summary judgment on the issue of prejudgment interest, concluding that the evidence raised a genuine issue of material fact concerning the question of whether the Government had provided such a written demand to those PRPs.  Id. at 20-21.  In reaching that conclusion, this Court noted that, although the Government had submitted with its Reply Memorandum (Doc. #702) what appeared to be copies of return receipts signed by agents of Senser Metal, Caldwell and Ace, it had not offered any evidence

---

received the June 26, 1989, demand letter, Levine, the proprietor, also received that document.  If the Court concludes that Ace received the demand letter, it will reject Levine's argument that there is a genuine issue of material fact as to whether he received the demand letter, since it was mailed to Ace, rather than to him.  Since the conclusion that Levine received the June 26, 1989 demand letter will be based on his relationship with Ace, rather than on that letter having been addressed to him, the Court does not discuss further the issue of whether Levine received that letter.

authenticating those documents.  Id.  Thus, even though the uncontroverted evidence demonstrated that the Government had sent written demand letters on June 26, 1989, and June 20, 1991, the Court denied summary judgment to the Government, because there was a genuine issue of material fact as to whether Senser Metal, Caldwell and/or Ace had received those letters.

In an effort to demonstrate that the evidence does not raise such a genuine issue of material fact on the question of demand letters, the Government has supported its current motion with additional evidence.  In particular, the Government has submitted the Declaration of Janet Pfundheller ("Pfundheller"), an employee of Region 5 of the EPA, in the Records Office for the Superfund Division.  In that capacity, Pfundheller is the custodian of records for the USL Site and has personally compiled and supervised the compilation of the records for that superfund site.  Attached to her Declaration are copies of the June 26, 1989, demand letter; return receipts, purportedly signed by agents of Senser Metal, Caldwell and Ace; the 30-day response report complied an EPA contractor; and the June 20, 1991, demand letter.  Pfundheller has explained in her Declaration those records have been maintained by the EPA as records available to the public, in accordance with statutory authorization.

The Government has also submitted the Declaration of Thomas Marks ("Marks"), currently Section Chief of the Remedial Enforcement Services Section of the Superfund Division of Region 5 of the EPA, a function which he has performed since May, 1990.  From February, 1989, until January, 1990, he served as a specialist in the Cost Recovery Unit of the Superfund Division for Region 5.  In his Declaration, Marks has provided a detailed explanation of the documents attached

to Pfundheller's Declaration.  For present purposes, it is sufficient to note that Marks has explained the procedures utilized by the EPA and its contractors for tracking the receipt of demand letters by PRPs.  Based upon the documents attached to Pfundheller's Declaration, Marks indicates that the June 26, 1989, demand letter was sent by certified mail to PRPs, including, Ace, Caldwell and Senser Metal, on June 29, 1989, and that it was received by Ace on July 8, 1989, and by Caldwell and Senser Metal on July 5, 1989.

In addition, the Government has submitted the Declaration of Sherry Estes ("Estes"), an attorney employed by Office of Regional Counsel for Region 5 of the EPA since 1990.  Since that year, Estes has served as the EPA's enforcement counsel for the USL Site.  In that capacity, she was responsible for the issuance of the demand dated June 20, 1991, which was sent to PRPs for that hazardous waste site.  Estes has also authenticated that demand letter, a copy of which is attached to Pfundheller's Declaration.

Rule 901(a) of the Federal Rules of Evidence provides:

(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

See also, Cabaniss v. City of Riverside, 497 F. Supp.2d 862, 874-75 (S.D.Ohio 2006) (concluding that a document is authentic and can be considered when ruling on a motion for summary judgment, when it satisfies Rule 901(a)), affirmed, 231 Fed. Appx. 407 (6th Cir. 2007).  Herein, the evidence presented by the Government is sufficient to demonstrate that the return receipts, purportedly signed by agents of Senser Metal, Ace and Caldwell, are what the Government claims them to be, i.e., return signed by agents of Senser Metal, Ace and Caldwell.

Moreover, the Declarations submitted by the Government satisfy the requirements imposed by Rule 901(b).[4]  Pfundheller's Declaration establishes that the documents attached thereto are public records, authorized to be made by law and available in a public office for public inspection.  Indeed, those records can be searched by computer.

Although none of those Defendants has presented evidence to controvert the evidence presented by the Government, they argue that the Government has failed to demonstrate the absence of a genuine issue of material fact on the question of whether Senser Metal, Caldwell and Ace received copies of the June 26, 1989, demand letter.  In its Decision filed on September 20, 2007 (Doc. #737), this Court recognized the existence of such an issue of fact.  Based upon the evidence submitted with the Government's current request for summary judgment on the issue of prejudgment interest, this Court cannot agree.[5]  In addition, Caldwell argues that there is a genuine issue of material fact concerning the question of whether it received the demand letter, since it was mailed to it care of Columbus Recycling.  Caldwell has not presented evidence in support of its

---

[4]Rule 901(b) provides:
> (b) <u>Illustrations</u>.  By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>   *        *        *
> (7) <u>Public records or reports</u>.  Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

[5]Thus, the Court rejects the argument of Caldwell and Ace that the Government has failed to authenticate the documents attached to Pfundheller's Declaration, because it did not submit an affidavit or declaration from the individual who prepared those documents.

- 11 -

proposition that it did not receive the demand letter. Although Caldwell's factual assertion about where that letter was sent is correct, it is undisputed herein that an entity operated by Katz is named Columbus Recycling. See Decision and Entry of July 14, 2005 (Doc. #635). Moreover, it will be noted that it is uncontroverted that Katz was formerly a general partner of Caldwell (see Doc. #705 at 8-9), the issue being whether he was a general partner of that partnership when it delivered batteries to the USL Site. Therefore, the Court rejects Caldwell's assertion that there is a genuine issue of material fact as to whether it received the demand letter, since it was addressed to Columbus Recycling. Moreover, the Court rejects Levine's argument that there is a genuine issue of material fact as to whether he received the demand letter, since it was addressed to Ace, rather than to himself. See Footnote 3, supra.

Based upon the foregoing, the Court concludes that the evidence fails to raise a genuine issue of material fact as to whether Senser Metal, Caldwell and Ace received the demand letter mailed to them in June, 1989. On the contrary, the uncontroverted evidence demonstrates that the demand letter was received by Ace on July 8, 1989, and by Caldwell and Senser Metal on July 5, 1989. Accordingly, the Court concludes that the Government has properly calculated prejudgment interest from the date upon which each expenditure was made, since those dates are subsequent to July 8, 1989.[6]

---

[6] Because of the manner in which this Court has resolved this issue, it is not necessary to address the Government's argument that there is a strong presumption that the demand letters were delivered, given that they were sent certified mail. See Doc. #738 at 10 (describing that argument and noting that the argument is independent of its other assertions). It is also unnecessary to consider the opposition of Caldwell, Ace, Levine and Katz to that argument. See Doc. #741 at 4.

II.  Calculation of Amount of Prejudgment Interest

The Government seeks to recover prejudgment interest in the amount of $3,390,618.47, which has accrued through November 15, 2007, on the sum of $5,315,465.88, in costs, which this Court concluded the Government was entitled to recover, in its Decision of September 20, 2007 (Doc. #737).  It has supported its assertion that it has properly calculated the amount of prejudgment interest it seeks to recover with the Declaration ("Declaration II" or "second Declaration") of Julie Sidlo ("Sidlo"),[7] a cost accountant employed by the EPA in Region 5.  Previously, Sidlo submitted another Declaration ("Declaration I" or "first Declaration"), in support of the Government's Motion for Partial Summary Judgment on Costs (Doc. #680).  Therein, she provided detail about the costs the Government had incurred to remediate the USL Site.  In her second Declaration, Sidlo explains that Declaration I included costs incurred through August 31, 2005, and that, in calculating the amount of such costs, she had excluded the Government's expenditures for the "innovative remedy," initially proposed in the 1988 Record of Decision ("ROD") for the USL Site.[8]

Senser Metal presents four factual questions which it contends must be resolved before the Court can determine whether the Government is entitled to recover all the prejudgment interest it seeks, to wit: 1) whether the costs included

---

[7]Sidlo's second Declaration is attached to the Government's Motion for Partial Summary Judgment on Interest (Doc. #738) as Exhibit 4.

[8]The Government refers to that remedy as an "innovative remedy."  This Court has previously used the "an untried, innovative and expensive remedy" to describe it.  See Doc. #734 at 8.

- 13 -

in the interest calculations include expenses related to the withdrawn, innovative remedy; 2) the specific starting date for each claimed expenditure for which an interest claim is made; 3) how the interest calculation was made; and 4) whether there are special circumstances that preclude awarding the Government prejudgment interest in this litigation.  See Doc. #740 at 1-2.[9]  In brief fashion, Ace, Caldwell, Levine and Katz join the second of Senser Metal's four assertions. See Doc. #741 at 6.  The Court addresses those four assertions in the above order, discussing the second and third arguments together, because they are interrelated.

First, this Court noted in its Decision of September 20, 2007, that the Government was not seeking summary judgment for the costs it had incurred with the remedy adopted by the 1988 ROD.  See Doc. #737 at 6.  This Court concluded therein that the evidence failed to raise a genuine issue of material fact as to whether the Government was attempting to recover such costs.  Id. at 16-17.  Sidlo, the accountant who computed prejudgment interest, has reinforced the Court's conclusion in that regard with her second Declaration, wherein she states, once again, that the Government is not attempting to recover prejudgment interest on those costs.  Sildo Declaration II at ¶ 7.  Senser Metal argues, however, that the Government's assertion is belied by the Interest Costs Summary ("ICS"), a document of some 400 pages which is attached to Sildo's second Declaration.  In particular, Senser Metal points to page 322 of the ICS, which is a summary page,

---

[9]The section headings used by Senser Metal in its memorandum (Doc. #740) do not correspond with the language set forth above.  The Court's listing is the manner in which its propositions have been listed on pages 1 and 2 of its memorandum.  See Doc. #740 at 1-2.

- 14 -

arguing that it demonstrates that the Government is seeking to recover interest on costs incurred from 1985 through 2005.  See Doc. #740 at 3-4.  Although that page does not disclose that the Government is specifically seeking to recover interest on costs incurred from 1985 through 1988, it is seeking interest on its expenditures for the rest of those years.  While it is seeking interest on less than $33,000 in costs incurred from 1989 through 1992, when it was expending large amounts for the innovative remedy, the Government has explained that it was incurring other expenses during those years, such as paying contractors to locate PRPs and to send demand letters to them.  Consequently, the fact that the Government is seeking to recover interest on some costs incurred during the years that the innovative remedy was being pursued does not cause this Court to conclude that there is a genuine issue of material fact on the question of whether the Government is seeking prejudgment interest on the costs it incurred for that remedy.[10]

Second, Senser Metal argues that the Government is not entitled to summary judgment on interest, because there are genuine issues of material fact on the specific starting date for each claimed expenditure for which an interest claim is made and how the interest calculation was made therein.  See Doc. #740 at 6.  In support thereof, that Defendant cites page 322 of the ICS, the summary

---

[10]In the section of its memorandum in which it has presented the above-discussed argument, Senser Metal asserts that the Government's demand letter was inadequate and did not support the massive amount of interest that is sought herein. See Doc. #740 at 5.  Apparently, Senser Metal takes the position that the demand is not effective, since the Government requested less than $2 million in the June 26, 1989, demand letter, while it obtained summary judgment on costs in the sum of $5,315,465.88.   In support thereof, that Defendant relies on United States v. DuPont, 2004 WL 1812704 (D.Del. 2004).  Simply stated, that decision does not remotely support Senser Metal's argument.

page, and argues, without citing examples, that the math thereon cannot be reconciled, that the summary does not set forth the date upon which the items for which interest is sought were incurred and that the interest rates set forth thereon bear no relation to the correct interest rate. Id.  This Court has previously rejected a similar argument, with respect to the Government's entitlement to summary judgment on costs. See Doc. #738 at 17.  Moreover, as the Government explains in its Reply Memorandum, the information which Senser Metal claims is missing is found on the 114 pages of the ICS, labeled "Interest Cost Detail." See Doc. #742 at 9.

In addition, Ace, Caldwell, Katz and Levine argue that the Government is not entitled to summary judgment on the amount of prejudgment interest, because it is not clear, with respect to any of the items for which such interest is sought, whether the date of the expenditure or the date of the demand letter is used. See Doc. #741 at 6.  In support thereof, these Defendants's rely solely upon ¶ 11b of Sildo's second Declaration, wherein she states that, for each item, she computed interest from the later of the date of the demand letter or when the cost was incurred.  That statement does not demonstrate that the amount of prejudgment interest to which the Government is entitled was miscalculated.  Moreover, these Defendants have not pointed to any document in the ICS which supports their contention in this regard.  Therefore, the Court rejects their assertion that ¶ 11b of Sildo's second Declaration demonstrates the existence of a genuine issue of material fact.

Third, Senser Metal has identified the question of whether there are special circumstances that preclude awarding the Government prejudgment interest in this

litigation, contending that a trial is needed to resolve whether those circumstances exist.  Although none of the headings in its memorandum directly corresponds with this particular proposition, this Defendant has argued that there must be a trial of this issue, because of the Government's egregious delay in the management of the USL Site and of this litigation, and because there are questions of fact concerning the Government's good faith conduct of this proceeding.  See Doc. #740 at 4-5.  Previously, this Court rejected similar challenges to the Government's request for summary judgment on costs.  See Doc. #737 at 17-19.  Based upon the reasoning therein, this Court once again rejects this proposition by Senser Metal.

Based upon the foregoing, the Court rejects the Defendants' challenges to the amount of prejudgment interest being sought by the Government, $3,390,618.47, and concludes that the Government is entitled to recover that sum from Senser Metal, Ace, Caldwell and Levine, jointly and severally, and that, if Katz is ultimately found to be jointly and severally liable for costs, he will not be permitted to challenge the Government's entitlement to recover that amount of prejudgment interest.[11]

---

[11] In its current motion, the Government has also requested summary judgment from Edison Automotive, Inc. ("Edison"), on the issue of prejudgment interest.  In its motion for partial summary judgment on costs, the Government mentioned, in a footnote, that it was seeking partial summary judgment on costs from Edison.  See Doc. #680 at 1 n. 1.  Given that Edison has not filed anything in this litigation, since its counsel was given leave to withdraw on May 24, 2002 (see Notation Order appearing on Doc. #525), it has opposed neither motion seeking partial summary judgment.  Based upon reasoning and citations of authority set forth in this Decision and the Court's Decision of September 20, 2007 (Doc. #737), and the evidentiary materials submitted by the Government in support of those motions, the Court concludes that the Government is entitled to summary judgment against Edison on costs in the sum of $5,315,465.88, and prejudgment interest in the amount of $3,390,618.47.

- 18 -

Accordingly, the Court sustains the Government Motion for Partial Summary Judgment on Interest (Doc. #738).


September 23, 2008

                                        /s/ Walter Herbert Rice
                                      WALTER HERBERT RICE, JUDGE
                                      UNITED STATES DISTRICT COURT


Copies to:

Counsel of record.