IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,          :

        Plaintiff,          :

              vs.          :

ATLAS LEDERER COMPANY, et al.,          :

        Defendants.          :

Case No. 3:91cv309

JUDGE WALTER HERBERT RICE

---

COURT'S OBSERVATIONS ON GOVERNMENT'S STATUS REPORT
(DOC. #891); COUNSEL FOR GOVERNMENT AND REMAINING
DEFENDANTS DIRECTED TO FILE SEPARATE STATUS REPORTS, IN
RESPONSE TO THE COURT'S OBSERVATIONS HEREIN, WITHIN 10
CALENDAR DAYS OF DATE

---

This litigation arises under the Comprehensive Environmental Response,

Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq.  Plaintiff

United States of America ("Plaintiff" or "Government") brings this litigation in

accordance with § 107(a) of CERCLA, 42 U.S.C. § 9607(a), seeking to recover the

costs it has incurred to remediate environmental contamination at the United Scrap

Lead Company Superfund Site ("USL Site"or "Site") in Troy, Ohio, from a number

of potentially responsible parties ("PRPs").  At that USL Site, the United Scrap Lead

Company collected used car, truck and industrial batteries from numerous

businesses and individuals.  The batteries were broken open to remove the lead

cores and lugs, which caused the USL Site to become contaminated with hazardous substances, including lead and lead contaminated sulphuric acid.  As a result of that contamination, the Site has been included on the National Priorities List.  See 40 C.F.R. Pt. 300, App. B.  A group of PRPs agreed to fund the remedy which has resulted in the cleanup of the USL Site.

Following settlement with the Senser Defendants, the Government has filed its Status Report (Doc. #891), in which it indicates that its claims against a number of parties have not been resolved and that the amount of that liability has not been determined.  As a means of analysis, the Court will initially discuss liability issues, following which it will turn to the amount of damages the Government seeks to recover.

I.  Liability Issues

The Government points out that claims against Ace Metal Co. ("Ace"), Norman's Automotive ("Norman's"), Alan Levine ("Levine") and Edison Automotive ("Edison"), remain to be resolved in this litigation.  In its Decision of September 28, 2006 (Doc. #705), this Court ruled on a request for summary judgment by the Government, addressing, inter alia, the liability of Levine for the actions of Ace and Norman's.  The Court concluded as a matter of law that Levine operated Ace as a sole proprietorship from its inception in about 1964, until it was incorporated in 1980, and that, therefore, he was liable for its actions during that period. Doc. #706 at 5-6.  The Court also noted that Levine, doing business as Ace, sold scrap batteries to the USL from 1966 until 1977.  Id.  As to Norman's, the Court

noted that it had been operated as a sole proprietorship by Levine's father until his death in 1977. Id. at 7. The Government had argued that Levine had operated Norman's as a sole proprietorship between 1977 and 1980, as well. The Court concluded that the evidence raised a genuine issue of material fact on that latter question, given that Levine argued that he had merely used the name "Norman's" as a division of Ace and that there was no evidence that Norman's had delivered and disposed of batteries at the USL Site after his father died. Upon reflection, the Court sees no need for a trial on this issue, since Levine has conceded that Ace used the name "Norman's" after his father's death, which would appear to make Levine liable for deliveries by "Norman's" after his father had died.

In their joint answer (Doc. #519), Ace and Norman's raise 18 affirmative defenses, while Edison raises 19 affirmative defenses in its Answer (Doc. #238).[1] None appears to be viable to the Court.


II.  Amount of Remaining Defendants' Liability

The Government also raises a number of issues concerning the amount of the remaining Defendants' liability, which are set forth in the bullet points on pages 2 and 3 (unnumbered) of the Government's Status Report (Doc. # 891). The Court has three comments on the Government's claimed damages.

First, although final judgment has not been entered against Caldwell and Katz, this Court indicated in its Decision, after the trial involving Katz, that Caldwell, for which Katz was found therein to be liable, was so liable for

---

[1]Levine has not filed a separate answer, perhaps because his sole proprietorship, Ace, has filed one.

$8,706,084.35.  The purpose of the trial involving Katz was to resolve his liability.
The Court can discern no basis for permitting the Government to reopen that
matter to impose a greater liability on Katz.

Second, the Government suggests that some of the issues concerning the
increased damages and interest it seeks to recover can be resolved on summary
judgment and some will require a trial (i.e., the Government's desire to recover for
costs incurred for the "innovative remedy").  The Government must explain what
issues need to be tried.  If the remaining issues concerning the innovative remedy
involve the amount of funds expended on same and the interest thereon, a single
trial of all additional damages and interest might make sense.  It should be noted
that the Court granted the Government summary judgment on its costs incurred,
$5,315,465.88,[2] see Doc. #737, and prejudgment interest on that sum in the
amount of $3,390,618.47.  See Doc. #749.  The sum of those two figures is
$8,706,084.35.  If more issues than the amount of these costs are raised by the
request to recover costs for the "innovative remedy," then perhaps the amount of
all costs can be resolved by summary judgment, with the other issues resolved by
trial.

Third, the Court questions whether it is really necessary to proceed further
on costs and interest.  The Government will be entitled to judgment, jointly and
severally, against Levine, Ace Edison and Katz for the sum of $8,706,084.35, less
the sum to be paid by Senser.  Does the Government foresee that it will be able to

---

[2]The Government filed its Motion for Partial Summary Judgment (Doc. #680) on
June 30, 2006.  The sum sought included costs incurred by the EPA through
August 31, 2005, and by the Department of Justice through June 26, 2006.  See
Doc. #680 at 6 fn. 12.

collect a judgment against the remaining PRPs for more than that amount? It occurs to the Court that the quickest manner of addressing the Government's implicit proposition that the remaining Defendants' assets would permit it to collect a larger judgment than $8,706,084.35, less the amount paid by Senser, is to have the Government file a motion for summary judgment on the increased interest incurred. The Court previously awarded interest on costs through November 15, 2007. See Doc. #738 at 13. The Government, therefore, appears to be entitled to recover an additional 4 years, 3 months of interest.

Within 10 calendar days from date, counsel for the Government and the remaining Defendants shall each file a status report in response to the Court's observations set forth herein. A telephone conference call will then be convened.

February 10, 2012

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of record.